IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STACEY R. M.,                           §
                                        §
              Plaintiff,                §
                                        §
V.                                      §          No. 3:17-cv-2287-N-BN
                                        §
NANCY A. BERRYHILL,                     §
Acting Commissioner of Social Security, §
                                        §
              Defendant.                §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Stacey R. M. seeks judicial review of a final adverse decision of the
Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons
explained below, the hearing decision should be affirmed.

**Background**

Plaintiff alleges that she is disabled as a result of psoriatic arthritis; spine
disorder; fibromyalgia; migraines; major depressive disorder; anxiety disorder;
psoriasis; pelvic pain; and obesity. After her application for disability insurance
benefits was denied initially and on reconsideration, Plaintiff requested a hearing
before an administrative law judge ("ALJ"). That hearing was held on April 20, 2016.
*See* Dkt. No. 10-4 (Administrative Record ["Tr."] at 43-75 (Hearing Transcript)). At the
time of the hearing, Plaintiff was 44 years old. Plaintiff has not engaged in substantial
gainful activity since June 7, 2014, the alleged onset date.

The ALJ found that Plaintiff was not disabled and therefore not entitled to disability benefits. The ALJ specifically found that (1) Plaintiff was not engaging in substantial gainful activity during the relevant period; (2) Plaintiff has several medically determinable impairments that are "severe" – but not all of those that Plaintiff alleged; (3) Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff has a residual functional capacity ("RFC") to perform sedentary work subject to certain limitations; (5) Plaintiff is unable to perform any past relevant work; and (6) there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

Plaintiff appealed that decision to the Appeals Council. The Council denied the Plaintiff's request for review.

Plaintiff then filed this action in federal district court. Plaintiff argues that (1) the ALJ applied an incorrect severity standard in determining whether Plaintiff's impairments are "severe"; (2) although the ALJ found that Plaintiff has severe impairments, the ALJ failed to consider the functional limitations imposed by those impairments in determining Plaintiff's RFC; and (3) the Commissioner did not establish the existence of other work which Plaintiff can perform.

The undersigned concludes that the hearing decision should be affirmed.

**Legal Standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether Commissioner applied the proper legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"In order to qualify for disability insurance benefits or [supplemental security income], a claimant must suffer from a disability." *Id.* (citing 42 U.S.C. § 423(d)(1)(A)).

3

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a).

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447-48 (5th Cir. 2007).

The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. *See Copeland*, 771 F.3d at 923; *Audler*, 501 F.3d at 448. A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Copeland*, 771 F.3d at 923; *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows that the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced the plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if the plaintiff substantial rights have been affected, *see Audler*, 501 F.3d at 448.

"Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, the plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

## Analysis

Plaintiff argues that the ALJ erred by (1) failing to apply the proper legal standards to determine Plaintiff's "severe" impairments; (2) not considering all functional limitations based on Plaintiff's severe impairments; and (3) concluding that Plaintiff could perform other work.

For the reasons explained below, the undersigned concludes that the hearing decision of the ALJ should be affirmed.

I.     The ALJ's Standard for "Severe" Impairments

Plaintiff argues that the ALJ committed reversible error at Step 2 by neither citing nor applying the appropriate legal standard for severe impairments, set forth by *Stone v. Heckler*, 752 F.2d 1099, 1102 (5th Cir. 1985), and that, without this analysis, the Commissioner cannot meet her fifth-step burden to show that Plaintiff can perform other gainful and substantial work in the economy.

At Step 2, the primary analysis is whether a claimant's impairment, or combination of impairments, is severe, irrespective of age, education, or work experience.  *See Stone*, 752 F.2d at 1100. In *Stone*, the United States Court of Appeals for the Fifth Circuit "construed the current regulation as setting the following standard in determining whether a claimant's impairment is severe: '[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Id.* at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). In making a severity determination, the

6

ALJ must set forth the correct standard by reference to Fifth Circuit opinions or by an express statement that the Fifth Circuit's construction of the regulation has been applied. *See Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986).

A court must assume that the "ALJ and Appeals Council have applied an incorrect standard to the severity requirement unless the correct standard is set forth by reference to [*Stone*] or another [opinion] of the same effect, or by an express statement that the construction [the Fifth Circuit gave] to 20 C.F.R. § 404.1520(c) (1984) is used." *Stone*, 752 F.2d at 1106. Notwithstanding this presumption, the Court must look beyond the use of "magic words" and determine whether the ALJ applied the correct severity standard. *See Hampton*, 785 F.2d at 1311. That is, the presumption may be rebutted by a showing that the ALJ applied the correct legal standard, regardless of the ALJ's recitation of the severity standard, or that the ALJ's application of the incorrect standard was harmless. *See Morris v. Astrue*, No. 4:11-cv-631-Y, 2012 WL 4468185, at *9 (N.D. Tex. Sept. 4, 2012), *rec. adopted*, 2012 WL 4466144 (N.D. Tex. Sept. 27, 2012); *see also Taylor v. Astrue*, No. 3:10-cv-1158-O-BD, 2011 WL 4091506, at *6 (N.D. Tex. June 27, 2011), *rec. adopted*, 2011 WL 4091503 (N.D. Tex. Sept. 14, 2011) (applying harmless error analysis in *Stone* error cases).

Here, the ALJ found that Plaintiff has severe impairments of psoriatic arthritis; spine disorder; fibromyalgia; migraines; major depressive disorder; and anxiety disorder. *See* Tr. at 26. The ALJ further found that Plaintiff's alleged psoriasis, pelvic pain, and obesity were non-severe impairments. *See id.*

In so finding, the ALJ did not cite to *Stone*. The ALJ stated that an impairment is severe if it "significantly limits your physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. § 404.1520(c)); *see also id.* at 25. This is the very standard set forth in 20 C.F.R. §§ 404.1520(c) and 416.920(c) that *Stone* found to be inconsistent with the Social Security Act. *See Stone*, 752 F.2d at 1104-05; *Craaybeek v. Astrue*, No. 7:10-cv-054-BK, 2011 WL 539132, at *6 (N.D. Tex. Feb. 7, 2011). The ALJ also stated that "an impairment or combination of impairments is 'not severe' when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work." Tr. at 25 (citing 20 C.F.R. 404 1521; SSR 85-28,96-3p, & 96-4p); *see also* Tr. at 27(citing 20 C.F.R. § 404.1521(a)). "The 'minimal effect' standard is also wholly inconsistent with *Stone*." *Craaybeek*, 2011 WL 539132, at *6 (citing cases).

"The ALJ's referral to applicable social security regulations and rulings, including SSR 85-28, does not substitute as a proper construction of the Stone standard." *Rivera v. Colvin*, No. 3:14-cv-4328-BN, 2016 WL 687170, at *4 (N.D. Tex. Feb. 19, 2016) (citing *Scott v. Comm'r of Soc. Sec. Admin.*, No. 3:11-cv-152-BF, 2012 WL 1058120, at *7 (N.D. Tex. Mar. 29, 2012) (citing cases)). "And SSR 85-28, which was amended shortly after *Stone* was decided, continues to provide that an impairment is severe if it has 'no more than a minimal effect on an individual's ability to work.'" *Id.*

*Stone*, in contrast, does not allow for a minimal interference with a claimant's ability to work.

In the past, the ALJ's *Stone* error for automatic remand because it constituted a legal error. *See, e.g., Scroggins v. Astrue*, 598 F. Supp. 2d 800, 806-07 (N.D. Tex. 2009); *Sanders v. Astrue*, No. 3:07-cv-1827-G-BH, 2008 WL 4211146, at *8 (N.D. Tex. Sept. 12, 2008). More recently, however, courts have not automatically remanded such cases. *See, e.g., Lacy v. Colvin*, No. 3:13-cv-1312-BN, 2013 WL 6476381, at *8 (N.D. Tex. Dec. 10, 2013); *Rivera v. Colvin*, No. 3:12-cv-1748-G-BN, 2013 WL 4623514, at *6 (N.D. Tex. Aug. 28, 2013); *Easom v. Colvin*, No. 3:12-cv-1289-N-BN, 2013 WL 2458540, at *4-*6 (N.D. Tex. June 7, 2013); *Jones v. Astrue*, 851 F. Supp.2d 1010, 1018 (N.D. Tex. 2012) (distinguishing *Loza v. Apfel*, 219 F.3d 378,393 (5th Cir. 2000), on which Plaintiff relies here). Rather, the presumption that legal error occurred based on the incorrect wording of the standard may be rebutted by a showing that the correct legal standard was actually applied by the ALJ, *see Morris*, 2012 WL 4468185, at *9, or that the error was harmless, *see Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Many courts have presumed that the *Stone* error is harmless where the analysis continues beyond Step 2. *See, e.g., Lederman v. Astrue*, 829 F. Supp. 2d 531, 539 (N.D. Tex. 2011).

Most cases where an ALJ's *Stone* error is not harmless involve the ALJ's failure after Step 2 to properly consider certain alleged impairments deemed "not severe." *See, e.g., Marston v. Berryhill*, No. 3:16-cv-1805-N-BN, 2017 WL 3328122, at *4 (N.D. Tex. June 29, 2017), *rec. adopted*, No. 3:16-cv-1805-N-BN, 2017 WL 3316135 (N.D. Tex.

Aug. 3, 2017); *Rivera v. Colvin*, No. 3:14-cv-4328-BN, 2016 WL 687170, at 6 (N.D. Tex. Feb. 19, 2016).

But Plaintiff does not argue that the ALJ erred in finding that her psoriasis, pelvic pain, and obesity are not severe, or that such an err affected the ALJ's finding that Plaintiff is not disabled. Plaintiff argues that, had the ALJ applied the *Stone* standard, the ALJ would have more fully recognized at Step 4 or Step 5 the impairments that the ALJ had already identified as "severe"– and under a stricter standard than *Stone* requires – at Step 2. But the standard by which an ALJ identifies certain impairments as "severe" at Step 2 does not inform the ALJ's treatment of those severe impairments at Step 4 and 5. That is, the ALJ's applying the wrong severity standard at Step 2 – but nonetheless reaching the correct Step 2 result – does not taint the ALJ's Step 4 and Step 5 findings here.

And Plaintiff's argument that the ALJ's *Stone* error was not harmless mirrors her second position in appealing the ALJ's decision: that the ALJ did not fully consider the functional limitations imposed by Plaintiff's impairments that the ALJ recognized as severe. Plaintiff points to evidence demonstrating Plaintiff's functional limitations imposed by her psoriatic arthritis and related joint pain – functional limitations that Plaintiff asserts the ALJ should have considered at Step 4 and Step 5. Plaintiff's position therefore appears to be that the ALJ's Step 4 and Step 5 findings as to the functional limitations that Plaintiff's severe impairments imposed are not supported by substantial evidence, and the undersigned will consider this argument in the section below.

The Court should accordingly find that the ALJ's *Stone* error was harmless at Step 2.

II.    Plaintiff's RFC

Plaintiff argues that the ALJ's decision is not based on substantial evidence because the ALJ failed to include sufficient functional limitations in Plaintiff's RFC.

A claimant will be found to be "not disabled" when it is determined that she retains the RFC to perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands ... of the occupation as generally required by employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *1-*2 (S.S.A. Nov. 30, 1981); *see also* 20 C.F.R. § 1560(b)(2).

The ALJ is responsible for determining a claimant's RFC before considering Step 4 of the sequential evaluation process if the claimant is at the ALJ hearing level. *See* 20 C.F.R. §§ 404.1546(c), 404.1520(e), 416.920(e). RFC is defined by 20 C.F.R. § 404.1545(a)(1) and § 416.945(a)(1), as "the most you can still do despite your limitations." In assessing a claimant's RFC, the ALJ must consider all of the claimant's "medically determinable impairments ... including [those] that are not 'severe,'" and "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(2)-(3). The RFC assessment is a function-by-function assessment, with both exertional and non-exertional factors to be considered. *See* SSR 96–8p, 1996 WL 374184, at *3-*5. The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).

11

In making his RFC finding, the ALJ considered all symptoms and the extent to which these symptoms were consistent with the objective medical evidence and other evidence. *See* Tr. at 30. The ALJ found that Plaintiff has the RFC to perform sedentary work subject to certain limitations: Plaintiff can only occasionally climb ramps and stairs, and can never climb laddres, ropes, or scaffolds; Plaintiff can frequently balance, and occasionally stoop, kneel, crouch, and crawl; Plaintiff can understand, remember, and carry out only simple instructions; and Plaintiff can make simple work-related decisions and perform simple routine tasks. *See id.*

Plaintiff argues that the ALJ – despite acknowledging the severity of Plaintiff's arthritis, migraines, spine disorder, and anxiety – failed to include appropriate functional limitations from each of these impairments in Plaintiff's RFC.

The undersigned concludes that the State medical consultants' findings, Plaintiff's own testimony, and the objective medical record constitute substantial evidence, when considering the record as a whole, that supports the ALJ's RFC determination.

A.    <u>Arthritis</u>

First, as to Plaintiff's arthritis, Plaintiff argues that the ALJ should have included limitations with regard to Plaintiff's hands and fingers.

In the ALJ's review of the medical evidence – much of the same evidence that Plaintiff points to in arguing that the ALJ should have included hand and finger limitations in Plaintiff's RFC – the ALJ noted that Plaintiff had a long history of joint problems causing pain in her hands and fingers. *See id.* at 32. The ALJ explained that,

on evaluation in early 2014, Plaintiff complained of severe joint pain. *See id.* The ALJ explained that "[a]lthough records from September 2014 did note particular pain of the claimant's hands ... the same records also noted that the claimant's pain was manageable with use of multiple medications," *id.*, and that, on examination in October 2015, "multiple areas of soft tissue tenderness were found, including over the wrists and fingers." *id.* at 33.

As to Plaintiff's testimony, the ALJ acknowledged that Plaintiff testified to numbness and tingling in at least one of her extremities, *see id.* at 31, although, in fact, Plaintiff testified that she has numbness and tingling in both hands, *see id.* at 53. And the ALJ noted that, per Plaintiff's function report, Plaintiff has difficulty using her hands. *See id.* at 31.

But the ALJ also considered that, according to Plaintiff's function report, Plaintiff helps take care of her 18 year old daughter; takes care of pets; can bathe, shave, feed, and usuallly dress herself; prepares meals like sandwiches, frozen dinners, and soup; does the laundry; and drives herself around. *See id.* The ALJ further noted that, at the hearing, Plaintiff testified that she had voluntarily quit her most recent work as a manager. *See id.*

And the State agency medical consultants, on whose opinions the ALJ relied, did not include any limitations for handling and fingering. *See id.* at 83-84; 96-97. State agency medical physicians are considered experts in the Social Security disability program. *See Rawls v. Astrue*, No. 4:10–cv–71–BJ, 2011 WL 725279, at *11 (N.D. Tex.

Mar. 2, 2011). Although an ALJ is solely responsible for assessing a claimant's RFC, she must consider and evaluate any opinion by a state agency medical consultant regarding the claimant's RFC. *See* SSR 96–6p, 1996 WL 374180 (S.S.A. July 2, 1996).

The ALJ gave the opinion of one State medical consultant, Leigh McCary, M.D., great weight. *See* Tr. at 35. As noted in the ALJ's RFC analysis, "Dr McCary opined that the claimant was capable of sedentary work, with most postural activities performable only occasionally, with the exception of balancing, which she could perform frequently." *Id.* The ALJ further explained that Dr. McCary's opinion is consistent with the medical evidence. *See id.*

The undersigned concludes that the ALJ was not required to include handling and fingering limitations in Plaintiff's RFC.

B.    Migraines

Second, Plaintiff maintains that the ALJ "failed to incorporate any limitations in Plaintiff's residual functional capacity" based on Plaintiff's migraines. Dkt. No. 13 at 9 of 18.

As to Plaintiff's migraines, the ALJ's RFC narrative states that "the record reveals that this impairment persisted throughout the relevant period, albeit at differing levels of intensity. On the whole, save for temporary exacerbation in early 2015, the claimant's headache-releated symptoms were largely moderate in nature, and have recently decreased in severeity." Tr. at 33.  The ALJ explained that, although the medical records reflect that Plaintiff struggled with debilitating headaches from July 2014 through early 2015, Plaintiff's headaches were greatly reduced once Plaintiff

14

began using Topamax to treat her headaches. *See id.* at 33-34. The ALJ went on to describe how,

> [b]y August 2015 [Plaintiff]'s examining physician noted a largely moderate level of headache pain, with cranial nerves intact. Additionally, Toradol administered during an office visit was at least partially effective in granting [Plaintiff] in-office relief (Exhibit 11F/2-3), offering additional control over the claimant's symptoms. The claimant's reduction in headache frequency thereafter persisted, as by March 2016, the claimant herself indicated that she was only having about 8 per month (Exhibit 12F/1-2).

*Id.* at 34.

The ALJ specifically concluded that "the claimant's headaches contribute to a general exertional weakness properly accommodated through restriction to sedentary work." *Id.* And, "to the extent that the claimant's headache pain may cause mental distraction negatively impacting the claimant's ability to concentrate," the ALJ "further accommodated such symptoms, per the mental limitations appearing in the residual functional capacity assessment above." *Id.*

In arguing that the ALJ should have imposed more limitations based on Plaintiff's migraines, Plaintiff maintains that the ALJ disregarded Plaintiff's testimony regarding the disabling effects of her migraine headaches. Plaintiff testified that she has 12 to 15 tension headaches per month and that 6 to 8 of those tension headaches turn into migraines. *See id.* at 68. Plaintiff explained that when she has a migraine, she takes her prescription medication, but Plaintiff stated that 3 to 4 times a month the medication is not effective. *See id.* at 68-69. Plaintiff further elaborated that her migraines last at least 6 hours to one and a half day. *See id.*

15

Plaintiff seems to acknowledge that the ALJ considered the frequency of Plaintiff's migraines and the medical evidence describing the progression of Plaintiff's treatment. But Plaintiff maintains that the ALJ did not consider Plaintiff's testimony that she must lie down for extended periods of time when her medication does not abate her migrane symptoms – 3 to 4 times per month – and the VE's testimony suggesting that 3 to 4 absences per month would prevent Plaintiff's performing substantial gainful activity.

In his decision, the ALJ was not required to explicitly reject or accept Plaintiff's testimony. *See Santos v. Colvin*, No. 1:15-CV-230-BL, 2016 WL 4442807, at *5 (N.D. Tex. Aug. 19, 2016) ("[T]he Fifth Circuit has held that an ALJ need not list specifically evidence accepted and rejected when making the decision.") (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)). Further, despite Plaintiff's testimony, there is no objective medical evidence in the record – and Plaintiff points to none in her brief – supporting Plaintiff's implication that her migraines strictly limit Plaintiff to lying down in a dark, quiet room for their duration. And the State agency medical consultants on whose opinions the ALJ relied did not impose this additional limitation.

The undersigned concludes that the ALJ was not required to incorporate any additional functional limitations from Plaintiff's migraines.

C.    Spine Disorder

Third, as to Plaintiff's spine disorder, Plaintiff argues that the ALJ should have noted a limitation in Plaintiff's cervical range of motion.

16

Plaintiff points to an evaluation by Dr. José Duarte in December 2015, who noted that Plaintiff was unable to turn her neck to the left, *see* Dkt. No. 13 at 9 of 18 (citing Tr. at 484), and an MRI in February 2015 that revealed disc protrusion, ostephyte changes, and narrowingof the neural foramina at certain parts of Plaintiff's cervical spine, *see id.* at 9-10 of 18 (citing Tr. at 476).

But the ALJ's decision makes clear that, in determining Plaintif's RFC, the ALJ reviewed and considered this cervical spine MRI, *see* Tr. at 31, as well as evidence showing that, by July 2015, Plaintiff had become more functional, *see id.* (citing Exhibit 12F/22). Further, State medical consultant Dr. McCary, who opined that Plaintiff was capable of performing sedentary work and most postural activities occasionally, did not impose additional functional limitations specific to Plaintiff's neck. And the ALJ explained that "Dr. McCary's opinion is consistent with the medical evidence ... show[ing] significant anomaly of both the lumbar and servical spine." Tr. at 35 (citing Exhibits 3F/2; 11F/17-18,21).

The undersigned concludes that the ALJ was not required to impose additional functional limitations as a result of Plaintiff's spine disorder.

D.    Anxiety

Fourth, as to Plaintiff's anxiety, Plaintiff maintains that there is nothing in the ALJ's RFC evaluation that suggests any functional limitations resulting from Plaintiff's severe anxiety.

In discussing how Plaintiff's anxiety affects her RFC, the ALJ explained that "while [Plaintiff]'s mental imparments are not disabling, they do contribute to

limitations of [Plaintiff]'s ability to perform basic work activities." *Id.* More specifically, the ALJ found that "due to [Plaintiff]'s anxiety ... she can understand, remember, and carry out only simple instructions, make only simple work-related decisions, and perform only simple routine tasks." *Id.*

Like with Plaintiff's other impairments discussed above, Plaintiff seems to argue that the ALJ should have imposed more functional limitations than what the ALJ already included for Plaintiff's anxiety. But Plaintiff does not suggest what additional limitation the ALJ should have imposed, and, in her brief, Plaintiff points to much of the medical evidence that the ALJ considered and relied upon in reaching his RFC assessment.

As reflected in the ALJ's RFC analysis, evidence in the record shows that, although Plaintiff complained of anxiety, multiple psychological examinations in July 2014 showed that Plaintiff was altert and oriented and not anxious. *See id.* at 292 & 301. At one of these visits, Plaintiff seemed irritated and tearful despite her not appearing anxious. *See id.* at 301. Plaintiff continued to complain of anxiety, and her pain clinic physician, Dr. Duarte, prescribed her medication, *see id.* at 400, noting that Plaintiff appeared "[v]ery stressed out due to pain" and "[u]nable to sleep," *id.* On psychological examination in Janaury 2015, Plaintiff was assessed with normal mood and affect, a normal attention span, and normal concentration. *See id.* at 405.

In March 2015, Plaintiff saw psychological consultative examiner, Laura J. Cooper, Psy. D., for complaints of anxiety. When Plaintiff was asked why she applied

18

for disability benefits, she did not mention any mental limitations, *see id.* at 421, but, when Plaintiff described her complaints, she indicated that she had a history of depressive episodes and reported significant anxiety related to her medical problems, chronic pain, and financial future, *see id.* at 422. Mental status examination at that time, however, failed to reveal substantial impairment. *See id.* at 423. Plaintiff was assessed as having no deficits of attention, concentration, memory, executive functioning, thought process, or thought content. *See id.* at 423-24. Dr. Cooper found that Plaintiff's judgment was adequate and her insight was fair, and diagnosed Plaintiff with generalized anxiety. *See id.* at 424.

The undersigned notes that ALJ gave Dr. Cooper's opinion partial weight because, although Dr. Cooper examined Plaintiff herself and was within the realm of Dr. Cooper's expertise, the opinion was not expressed in precise functional terms, was not supported with citation to substantiating evidence, and was too vague in assessing Plaintiff's function. *See* Tr at 36.

Mental status examination in April 2015, showed that Plaintiff displayed cooperative behavior, euthymic mood, and congruent affect. *See* Tr. at 428.

At the hearing, Plaintiff testified that she does not socialize much and tends to avoid crowds, but can deal with strangers fine, like when she goes into the grocery store. *See* Tr. at 62.

At the intial and reconsideration level, neither State psychological consultant found that Plaintiff had any severe mental impairments. Still, the ALJ gave these

opinions only partial weight and found that Plaintiff's subjective complaints of memory loss and confusion, and the combined cognitive effects of Plaintiff's psychological impairments and fibromyalgia, suggested a more serious mental impairment.

The undersigned concludes that the ALJ was not required to impose any additional functional limitations related to Plaintiff's anxiety.

III.    <u>Other Work Plaintiff Can Perform</u>

Plaintiff argues that the ALJ's finding that Plaintiff can perform alternative work is unsupported by substantial evidence because (1) Plaintiff's RFC – sedentary work plus certain postural and mental limitations  – is incompatible with the DOT's description of the jobs that the ALJ determined that Plaintiff can perform; and (2) because the VE's testimony that Plaintiff could perform such jobs conflicts with the Dictionary of Occupational Titles ("DOT").

It is the ALJ's burden at step five to show that a claimant is capable of performing other gainful employment in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(I); *Greenspan*, 38 F.3d at 236. Because the additional limitations found by the ALJ are classified as non-exertional limitations, *see* SSR 96–9P, 1996 WL 374185, at *5 (1996), the ALJ's decision that Plaintiff can perform available, alternative employment must be supported by substantial evidence, *see Allsbury v. Barnhart*, 460 F. Supp. 2d 717, 721 (E.D. Tex. 2006). Typically, the ALJ satisfies this burden in one of two ways. *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir.1987); *Allsbury*, 460 F.Supp.2d at 721. The first way is for the ALJ to receive testimony from

20

a vocational expert ("VE") or consider similar vocational resource evidence. *See Allsbury*, 460 F. Supp. 2d at 721. The second way is for the ALJ to consult the Grid Rules. *See id.*

In finding that Plaintiff could perform alternative work despite her limitations, the ALJ here relied on testimony of a VE. In his decision, the ALJ explained:

> If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.25 and Rule 201.19. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled sedentary occupational base, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirement of representative occupations such as:

> *Telephone Clerk* – DOT Code #: 209.667-014 / Sedentary / Unskilled / SVP 2 / 240,000 jobs nationally / 24,000 jobs in Texas; *Order Clerk* – DOT Code #: 209.567-014 / Sedentary / Unskilled / SVP 2 / 122,000 jobs nationally / 12,200 job in Texas; and *Address Clerk* – DOT Code #: 209.587-010 / Sedentary / Unskilled / SVP 2 / 112,000 jobs nationally / 11,200 jobs in Texas.

> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

> Tr. at 38.

Plaintiff argues that the job of telephone clerk actually has an SVP of 3, is performed at the semi-skilled level, and goes beyond the unskilled work category to which the ALJ limited Plaintiff; that the job of order clerk is classified by the DOT as performed at Reasoning Level 3, which Plaintiff cannot perform as limited to simple instructions, simple work-related decisions, and simple tasks; and that the job of address clerk is a semi-skilled job that plaintiff cannot perform because she is limited to unskilled work. Plaintiff further argues that the job of address clerk no longer exists.

The job of telephone clerk is formally referred to by the DOT as "order caller." DOT 209.667-014. Plaintiff appears to argue that because the job of order caller is classified by the Department of Labor's Standard Occupational Classification ("SOC") – a system used accross government agencies to classify occupational data – as "office clerks, general" under SOC code 43-9061, the ALJ should have used the SVP that the DOT provides for "clerk, general" (also called "office clerk"), DOT 209.562-010 – an SVP of 3. Plaintiff further argues that, because the DOT describes the job of general office clerk as semi-skilled work, the ALJ was required to discuss and identify Plaintiff's transferable work skills.

Plaintiff's argument fails to persaude. The DOT lists general office clerk and telephone clerk as separate and distinct jobs, and the ALJ found that Plaintiff could perform the work of a telephone clerk, specifically. As the ALJ noted in his decision, the DOT provides that the occupation of telephone clerk has an SVP level of 2. DOT 209.667-014. And the VE's testimony at the hearing was consistent with this description. *See* Tr. at 72 ("Some examples of unskilled sedentary jobs would include

22

a telephone clerk, 209.667-014. It's an SVP of 2, unskilled, sedentary."). The ALJ accordingly did not err in relying on the VE's description of telephone clerk as work that Plaintiff can perform. *See Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000). And, because that description provided that the work was unskilled with an SVP of 2, the ALJ was not required to identify transferrable work skills. *See* 20 C.F.R. § 404.1568(d)(1); SSR 82–41, 1982 WL 31389, at *2 (S.S.A.1982) ("Transferability of skills is an issue only when an individual's impairment(s), though severe, does not meet or equal the criteria in the Listing of Impairments in Appendix 1 of the regulations but does prevent the performance of past relevant work (PRW), and that work has been determined to be skilled or semiskilled."). Substantial evidence thus supports the ALJ's finding that Plaintiff can perform the work of telephone clerk.

Like the job of telephone clerk, address clerk – referred to as "addresser" in the DOT – is described in the DOT as having an SVP of 2. And the VE testified that the the Plaintiff can perform the job of "address clerk, 209.587-010, SVP of 2, unskilled, sedentary." Tr. at 72.

Plaintiff argues that because the DOT describes the duties of a different job – general office clerk, DOT 209.562-010 – to include "[a]ddress[ing] envelopes or packages by hand or with typewriter or addressograph machine," and "[s]tuffing envelopes by hand or with envelope stuffing machine," the job of address clerk no longer independently exists. And, according to Plaintiff, because the job of general office clerk is a semi-skilled job with an SVP of 3, Plaintiff cannot be said to be capable of performing such work.

These arguments also fail to persuade. Although a general office clerk may perform duties typical of an address clerk, it does not follow that stand-alone address clerks no longer exist in the national economy. The VE here testified that that 11,200 address clerk jobs exist in Texas and 112,000 address clerk jobs exist in the Untied States. *See* Tr. at 72. And, although Plaintiff now disputes the accuracy of the VE's assessment, Plaintiff failed to raise this issue when given the opportunity to cross-examine the VE at the hearing or counter with other evidence. *See Wilson v. Berryhill*, No. 3:16-cv-71-DPJ-LRA, 2017 WL 5056420, at *6 (S.D. Miss. June 19, 2017) (citing *Jasso v. Barnhart*, 102 F. App'x 877, 878 (5th Cir. 2004); *Carey*, 230 F.3d at 145-47), *rec. adopted*, No. 3:16-cv-71-DPJ-LRA, 2017 WL 4247556 (S.D. Miss. Sept. 25, 2017). The ALJ did not err in relying on the VE's testimony that Plaintiff could perform the work of an address clerk and that such job existed in the national economy. Substantial evidence supports the ALJ's finding that Plaintiff can perform the job of address clerk.

Further, because the VE testified that there were also 24,000 telephone clerk jobs in Texas and 240,000 telephone clerk jobs in the United States – and Plaintiff does not dispute that telephone clerk and address clerk work exists in significant numbers in the national economy – these two jobs alone provide substantial evidence for the ALJ's finding that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *See Lirley v. Barnhart*, 124 F. App'x 283, 284 (5th Cir. 2005) (per curiam) ("Under 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 404.1566, work exists in significant numbers in the national economy if it exists in significant numbers in either the region where the claimant lives or in other

24

regions of the country. In light of the vocational expert's testimony that [the claimant] could perform the job of surveillance system monitor and that 50,000 such jobs exist in the national economy, substantial evidence supports the Commissioner's finding that [the claimant] is not entitled to Social Security disability benefits."). Accordingly, the Court need not address Plaintiff's arguments as to the remaining work that the ALJ identified.

## Recommendation

For the reasons explained above, the hearing decision should be affirmed in all respects.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 23, 2018

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE